**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YOON JA KIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 01 cv 3895 |
| THE EARTHGRAINS CO., k/n/a SARA | ) | Magistrate Judge Susan E. Cox |
| LEE BAKERY GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After 10 long years of litigation, Yoon Ja Kim's, Ph.D. ("Dr. Kim") patent infringement claim – whose litigation costs caused Dr. Kim to twice remortgage her home, accumulate over $80,000 in credit card debt, and borrow money from friends and family – was ready for trial. But the Earthgrains Co., k/n/a/ Sara Lee Bakery Group, Inc. ("Sara Lee") has now filed a motion to dismiss with prejudice, pursuant to Title 28 of United States Code Section 1915(e)(2)(A).[1] Sara Lee claims Dr. Kim made false statements on her *in forma pauperis* ("IFP") application, warranting dismissal. While we find that she did, in fact, make false statements, we nonetheless deny the motion and set this case for trial [dkt. 247 & 254].

**II. BACKGROUND FACTS**

In 2001, Dr. Kim brought a patent infringement claim against Sara Lee *pro se*. In 2003, Dr. Kim retained Lord, Bissel & Brook LLP. Dr. Kim terminated those attorneys in early 2005 and retained McAndrews, Held & Malloy, Ltd. a few weeks later. In 2006, Dr. Kim terminated those

---

[1] 28 U.S.C. § 1915(e)(2)(A) (2010).

attorneys and again proceeded *pro se*.

On March 16, 2009, Dr. Kim told the Court that she was financially unable to retain counsel. The Court knew Dr. Kim's case was going to trial and believed it was in both parties' best interests that Dr. Kim have counsel. Consequently, the Court suggested to Dr. Kim that she apply for IFP status and informed Dr. Kim that the Court would assign counsel if she financially qualified.

On March 18, 2009, Dr. Kim filed a motion for leave to proceed IFP.[2] The IFP application contained eight questions that Dr. Kim answered by checking "yes" or "no" boxes.[3] Question 1 asked if Dr. Kim was currently incarcerated and, if so, whether she received payment from the institution.[4] Dr. Kim answered she was not incarcerated but did receive a $593 monthly payment from the institution.[5] Question 2 asked if Dr. Kim was currently employed, to which Dr. Kim answered "yes" and wrote that she was self-employed at "Research Resources, Inc."[6] Question 3(d) asked if Dr. Kim received more than $200 from Social Security within the past twelve months, to which Dr. Kim answered "no."[7] Question 3(e) asked if Dr. Kim received more than $200 in gifts or inheritances in the past twelve months, to which Dr. Kim answered "no."[8] Question 6 asked if Dr. Kim owned any real estate, to which Dr. Kim answered "no."[9] Dr. Kim's answers to Questions 1, 2, 3(d), 3(e) and 6 would later become a contentious issue.

Dr. Kim also included an additional information letter with her IFP application, though the IFP application did not require or request the additional letter.[10] Dr. Kim wrote in the letter that the

---

[2] Materials for 3/11/2010 Hearing, Ex. 2 at 1.
[3] *Id.* at 1-2.
[4] *Id.* at 1.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 1-2.
[8] *Id.*
[9] *Id.* at 2.
[10] *Id.* at 4.

"research and development of . . . [my] patent is supported by my parent's inheritance . . . ."[11] She further wrote, "[t]o pay for litigation costs, I . . . remortgaged my house in the U.S., [and] obtained [a] Home Equity Line of Credit, and accumulated credit card debt."[12] On March 31, 2009, the Court granted Dr. Kim IFP status and appointed her counsel.

On January 26, 2010, Sara Lee took Dr. Kim's deposition during supplemental discovery.[13] During the deposition, Dr. Kim testified that she (1) could receive income from her family in Korea if she wanted;[14] (2) paid her research and living expenses using her father's inheritance and still had money from her father's inheritance;[15] (3) owned and remortgaged a house in the U.S. to pay attorneys fees;[16] (4) owned a one-sixth share in a five-story commercial building in Korea that is co-owned with her brother and sisters;[17] (5) owned a one-sixth share in her family's forest and received about $80,000 in 2001-2002 from the Korean government when they built a road through the forest;[18] and (6) was not employed at Research Resources, Inc. as of March 18, 2009.[19]

At a status hearing on February 10, 2010, Sara Lee informed the Court of Dr. Kim's deposition testimony, suggesting that she may have made false statements on her IFP application. The Court relieved Dr. Kim's appointed counsel from further proceedings until the IFP issue was resolved. The Court then granted Sara Lee leave to file a motion regarding Dr. Kim's IFP status and allowed Sara Lee to request certain documents from Dr. Kim to more fully analyze her financial status. Dr. Kim again proceeded *pro se*.

---

[11]*Id.*
[12]*Id.*
[13]Defendant's Reply in Support of Its Motion to Dismiss, Ex. B at 1.
[14]*Id.* at 12:2-4.
[15]*Id.* at 12:6-21.
[16]*Id.* at 12:22-24.
[17]*Id.* at 311:24; 312:1-2, 21-23.
[18]*Id.* at 312:2-15.
[19]*Id.* at 10:9-14.

On February 16, 2010, Sara Lee filed both a document requesting Dr. Kim produce certain information needed to determine her financial status and a motion to dismiss with prejudice pursuant to section 1915(e)(2)(A), which provides that "the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue."[20] On March 2, 2010, Dr. Kim filed an opposition in response to Sara Lee's motion to dismiss and attached what she considered to be her amended IFP application as an exhibit. However, Dr. Kim never filed this amended IFP application with the Court. Of note, however, in her amended IFP application Dr. Kim mentioned for the first time that she received $593 monthly in Social Security benefits.[21]

On March 11, 2010, the Court held an evidentiary hearing on Dr. Kim's IFP application.[22] During cross-examination, Dr. Kim testified that she bought her house in 1985, paid off the mortgage sometime between 1990-1992, remortgaged her house in 2004-2005 for $220,000, and then again in 2006 for $50,000.[23] Dr. Kim confirmed that she (1) owned a one-sixth share of a commercial building in Korea;[24] (2) owned a one-sixth share in some other real property in Korea, though Dr. Kim was unsure whether the real property was a forest or a mountain;[25] and (3) received around $80,000 from the Korean government between 2004-2006 because the Korean government built a road through the real property.[26] Dr. Kim testified that in 2004 she borrowed about $60,000 from her friends in Korea and $20,000 from her nephew in Korea.[27] She also confirmed that she truthfully stated at her deposition that she was able to obtain money from her family in Korea.[28]

---

[20] 28 U.S.C. § 1915(e)(2)(A).
[21] Opposition to Defendant's Motion to Dismiss, Ex. 3 at 2.
[22] Report of Proceedings, March 11, 2010 at 1.
[23] *Id.* at 13:11-22; 15:7-25; 16:1-25; 17:1-7.
[24] *Id.* at 26:1-5.
[25] *Id.* at 25:18-25.
[26] *Id.* at 26:6-25.
[27] *Id.* at 47:16-20.
[28] *Id.* at 48:25; 49:1-11.

Dr. Kim also testified that she did not provide Sara Lee with all of the requested financial documents.[29] The Court told Dr. Kim that she violated the Court's order by failing to provide all of the documents.[30] In an attempt to comply with the Court's order, on March 15, 2010 Dr. Kim provided her credit card statements from late 2008 and early 2009. Dr. Kim's credit card balances on these statements were about $26,600 with Chase, $22,000 with Bank of America, $15,700 with American Express, $10,000 with Discover, and $9,000 with Citibank.[31]

## III. DISCUSSION

There is no question that Dr. Kim's IFP application contains false statements. Title 28 of United States Code Section 1915(e)(2)(A) entitled "Proceedings *in forma pauperis*" states "the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue."[32] And, in fact, in almost all circumstances, courts dismiss the case when a party makes false statements on their IFP application.[33] For example, the Seventh Circuit affirmed dismissals when

---

[29]*Id.* at 39:20-25; 40:1-8.
[30]*Id.* at 40:3-25; 41:1.
[31]Plaintiff's Reply to Defendant's Response and 3/11/2010 Hearing to Dismiss at 2.
[32]28 U.S.C. § 1915(e)(2)(A).
[33]*See, e.g.*, *In re* Sekendur, 144 F. App'x 553, 555 (7th Cir. 2005) (affirming the district court's decision to dismiss with prejudice because plaintiff failed to disclose his house, over $50,000 in dental equipment, and that his wife is an heiress with substantial assets); Thomas v. Gen. Motors Acceptance Corp, 288 F.3d 305, 306 (7th Cir. 2002) (affirming the district court's decision to dismiss with prejudice because plaintiff falsely stated that he would not be receiving money in the future); Mathis v. N.Y. Life Insurance Co., 133 F.3d 546, 547 (7th Cir 1998) (affirming the district court's decision to dismiss with prejudice because plaintiff failed to disclose he owned a house with $14,000 of equity); Weaver v. Borgwarner Transmission Sys., Inc., No. 07-C-2538, 2009 WL 4798220, at *4 (N.D. Ill. Dec. 14, 2009) (dismissing with prejudice because plaintiff failed to disclose that he earned at least $93,000 during the twelve months prior to filing his IFP application); Pelmer v. Dean, 562 F. Supp. 2d 1006, 1008 (N.D. Ill. 2008) (dismissing without prejudice because plaintiff failed to disclose three income sources and underreported his unemployment income); Bawaney v. TCF Bank, No. 05-C-5390, 2006 WL 3523842, at *2 (N.D. Ill. Dec. 5, 2006) (dismissing with prejudice because plaintiff failed to disclose over $200,000 deposited into his bank accounts during the twelve months prior to his IFP application); Lukaneva v. Levy Restaurants at McCormick Place, No. 05-C-6159, 2006 WL 1823169, at *11 (N.D. Ill. June 29, 2006) (recommending a dismissal with prejudice because plaintiff failed to disclose her employment, money and assets in Russia, and income received during the twelve months prior to her IFP application); Collins v. Dean Foods Co., No. 00-C-1224, 2001 WL 1263500, at *6 (N.D. Ill. Oct. 19, 2001) (dismissing with prejudice because plaintiff misrepresented his income).

a party failed to disclose their inheritance,[34] income and bank account balances,[35] and real estate.[36] But all of those cases were at the beginning stages of litigation when little to no discovery had been done in the cases. The purpose of granting IFP status is to "ensure that indigent litigants have meaningful access to the federal courts."[37] Courts, therefore, dismiss cases where the party, who had financial means to retain counsel, took advantage of a publicly funded resource meant for only the truly needy.[38]

There is, however, one exception to this general trend. The Seventh Circuit held in *Hrobowski v. Commonwealth Edison* that courts are not required to dismiss a case when the party did not "reap[] the benefits of *in forma pauperis* status."[39] That is, if the deceiving party spent considerable money financing the lawsuit and was only represented by IFP appointed counsel for a short time period, then it "does not make sense" to dismiss the case.[40] We find, here, that Dr. Kim did not "reap[] the benefits of IFP status."[41]

**A. Dr. Kim's False Answers**

We must first establish that Dr. Kim falsely answered Questions 1, 2, 3(d), 3(e), and 6 of her IFP application. Question 1 asked if Dr. Kim was currently incarcerated and, if so, whether she received payment from the institution. Dr. Kim truthfully answered she was not incarcerated, but

---

[34]Torain v. Ameritech Advanced Data Services of Ill., Inc., 319 F. App'x 433, 435 (7th Cir. 2009).
[35]Holly v. Wexford Health Services, Inc., 339 F. App'x. 633, 637 (7th Cir. 2009).
[36]McRoyal v. Commonwealth Edison Co., 263 F. App'x 500, 503 (7th Cir. 2007).
[37]Neitzke v. Williams, 490 U.S. 319, 324 (1989).
[38]*See, e.g.*, *Torain*, 319 F. App'x at 435; *Holly*, 339 F. App'x at 637; *McRoyal*, 263 F. App'x at 503.
[39]Hrobowski v. Commonwealth Edison Co., 203 F.3d 445, 448 (7th Cir. 2000); *see also* Davis v. Geren, No. 06-C-1469-WTL-TAB, 2009 WL 362877, at *1, *4 (S.D. Ind. Feb.11, 2009) (applying *Hrobowski,* the court found that section 1915(e)(2) did not mandate dismissal where the plaintiff made false statements on her IFP; the statute cannot be read literally because, if it were, "every time such a petition was denied because the plaintiff was not, in fact, impoverished in the judgment of the court, the case would have to be dismissed because the plaintiff would have made an allegation of poverty that was 'untrue,' in the sense that it was incorrect.").
[40]*Id.*
[41]*See id.*

stated she received a $593 monthly payment from the institution. Yet Dr. Kim did not receive money from any institution. Rather, what we know now is that Dr. Kim received $593 monthly in Social Security benefits.

Question 2 asked if Dr. Kim was currently employed. Dr. Kim answered "yes" and indicated she was self-employed at Research Resources, Inc. However, Dr. Kim testified during the deposition that she was not employed at Research Resources, Inc. as of March 18, 2009, the date she filed her IFP application. Furthermore, the Illinois Secretary of State website confirms that Research Resources, Inc. dissolved on October 10, 2008.

Question 3(d) asked if Dr. Kim received more than $200 from Social Security within the past twelve months. Dr. Kim answered "no" on her initial application, but then one year later amended her IFP application to state that she received $593 monthly in Social Security benefits. Question 3(e) asked if Dr. Kim received more than $200 in the past twelve months from an inheritance. Dr. Kim answered "no," yet testified at the deposition that she paid her research and living expenses using her father's inheritance and still has money from her father's inheritance. Additionally, Dr. Kim wrote in her IFP application's additional information letter that her parent's inheritance supports her patent's research and development.

Question 6 asked whether Dr. Kim owned any real estate, to which Dr. Kim answered "no." Yet Dr. Kim testified during the deposition that she owned a house in the U.S., a one-sixth share in a five-story commercial building in Korea, and a one-sixth share in her family's forest in Korea. At the evidentiary hearing regarding her IFP application, Dr. Kim confirmed, during cross-examination, her ownership interest in all three real properties. Dr. Kim testified that she purchased her U.S. house in 1985, paid off the mortgage sometime between 1990-1992, and then remortgaged her house

twice, once in 2004-2005 for $220,000, and again in 2006 for $50,000. Dr. Kim also testified that she was unsure whether she owns a one-sixth share in a forest or a mountain in Korea, but confirmed that she currently owns a one-sixth share in *some* real property in Korea.

### B. The *Hrobowski* Exception

While Dr. Kim undoubtedly made false statements on her IFP application, the circumstances surrounding her lawsuit and IFP application place the present case under the *Hrobowski* exception where dismissal with prejudice is inappropriate. The Seventh Circuit in *Hrobowski* reversed a district court's decision to dismiss with prejudice where the plaintiff's IFP application contained false statements.[42] The plaintiff disclosed his almost $48,000 income and a lot of land on his IFP application, but failed to disclose his truck and ownership interest in his children's automobiles.[43] The district court granted IFP status and assigned counsel, but the plaintiff's counsel requested leave to withdraw after disagreeing on a litigation strategy.[44] The plaintiff did not object to counsel's request and retained a new attorney using his own finances.[45]

The plaintiff then filed a second IFP application, where the plaintiff again failed to disclose his truck and ownership interest in his children's automobiles.[46] Additionally, the plaintiff failed to disclose his lot of land and $30,000 in workers' compensation he received the preceding year.[47] The court did not grant IFP status, and the plaintiff proceeded with the attorney he previously retained.[48] Eleven months later, the plaintiff revealed during cross-examination in the trial of his case the assets

---

[42] *Hrobowski*, 203 F.3d at 449.
[43] *Id.* at 446.
[44] *Id.*
[45] *Id.*
[46] *Id.* at 447.
[47] *Id.*
[48] *Id.*

he omitted from both of his IFP applications.[49] Finding that the plaintiff's IFP application contained false statements, the district court dismissed the case with prejudice.[50]

The Seventh Circuit in *Hrobowski* centered its analysis on "whether [the plaintiff] more closely resembles a party reaping the benefits of *in forma pauperis* status, or one who has not."[51] The Seventh Circuit noted that the plaintiff "expended considerable money and effort" bringing the case to trial and personally financed the case for at least eleven months of the two and one-half year long lawsuit.[52] The Seventh Circuit reasoned "[t]o dismiss [the] case under a section of the U.S. Code entitled 'Proceedings in forma pauperis' *after such a long stretch of proceeding as a nonpauper* does not make sense."[53] Therefore, the court reversed the district court's dismissal and suggested the district court sanction the plaintiff under Rule 11, but allow the case to be decided on its merits.[54]

### C. Applying *Hrobowski*

While Dr. Kim never cited to *Hrobowski* in her briefs, and Sara Lee did not attempt to distinguish it, the Seventh Circuit's analysis in *Hrobowski* is applicable. That court held that since the plaintiff spent considerable time and money on the lawsuit, proceeded for a significant time period not under IFP status, and the case was close to being decided on its merits, the plaintiff did not resemble a party who "reap[ed] the benefits of IFP status."[55] Like in *Hrobowski*, Dr. Kim does not resemble a party who "reap[ed] the benefits of IFP status"[56] because Dr. Kim (1) financed her lawsuit for over nine years and accumulated significant debt before applying for IFP status; (2) only

---

[49]*Id.*
[50]*Id.* at 447-48.
[51]*Id.* at 448.
[52]*Id.*
[53]*Id.*
[54]*Id.* at 448-49 (emphasis added).
[55]*Id.*
[56]*See id.* at 448.

applied for IFP status after the Court noted it as an option; and (3) gave contradicting information on her IFP application that suggests Dr. Kim likely misunderstood the application.

### 1. Dr. Kim Financed Her Lawsuit for over Nine Years.

While most IFP applicants apply for IFP status at the beginning of their lawsuit, Dr. Kim financed her now decade-long lawsuit for over nine years. Dr. Kim filed her claim in 2001 *pro se*. Dr. Kim continued to represent herself until 2003 when she retained a law firm. Dr. Kim terminated that firm in 2005 and immediately retained a different law firm. Dr. Kim terminated this second firm in 2006 and again proceeded *pro se*. Dr. Kim did not apply for IFP status until March 2009, after financing her lawsuit for over nine years. Dr. Kim was represented by IFP appointed counsel from March 2009 through January 2010, a time period of only ten months, which amounts to less than one-tenth the time of her decade-long lawsuit.

Furthermore, Dr. Kim accumulated significant debt in paying attorneys fees and litigation costs for over nine years. Dr. Kim remortgaged her house for $220,000 in 2004-2005, and again for $50,000 in 2006. Dr. Kim borrowed about $60,000 and $20,000 in 2004 from her friends and nephew in Korea, respectively. Dr. Kim also heavily depended on her credit cards. She accumulated significant credit card debt, with balances of about $26,600 with Chase, $22,000 with Bank of America, $15,700 with American Express, $10,000 with Discover, and $9,000 with Citibank. All of these funds appear to have financed her lawsuit, as well as her living expenses. Indeed, it would be fair to say that Dr. Kim finds herself in the precarious financial state that the records reveal she is in as a result of self-financing this lawsuit.

### 2. Dr. Kim Only Applied for IFP Status after the Court Noted It as an Option.

Dr. Kim applied for IFP status after financing her lawsuit for over nine years, but only did so because the Court suggested it as an option. At a status hearing in March 2009, Dr. Kim told the Court she did not have sufficient money to retain an attorney. The Court knew the case was going to trial and thought it was in both parties' best interests that Dr. Kim have representation. Therefore, the Court suggested that Dr. Kim apply for IFP status and told her the Court would appoint counsel if she qualified financially. Subsequently, Dr. Kim applied for IFP status. Dr. Kim was seemingly unaware that she could retain counsel through IFP status prior to the Court's suggestion and had never previously applied for IFP status during the first nine years of her lawsuit.

### 3. Dr. Kim's IFP Application Contains Internal Contradictions that Indicate She Likely Misunderstood the Application.

Dr. Kim falsely answered five questions on her IFP application. Yet each false answer was either contradicted by information elsewhere on her application or was a false statement that suggested Dr. Kim was wealthier, not poorer, than was true. Dr. Kim's false statements, therefore, indicate she likely misunderstood the application. Further, it was Dr. Kim's truthful answer during her deposition in this case that alerted defense counsel for Sara Lee that there may be a problem with her IFP in the first place.

First, Dr. Kim answered Question 1 by stating she received $593 from an institution at which she was incarcerated. Yet because she answered in the same question that she was not incarcerated, Dr. Kim technically gave a false answer. However, she misrepresented her financial status in the opposite way IFP applicants usually misrepresent their financial status; Dr. Kim's false statement

made her appear *wealthier* and, therefore, *less* likely to receive IFP status. It appears, now, that in answering Question 1, Dr. Kim was actually attempting to disclose her $593 monthly Social Security benefits. Yet Dr. Kim should have disclosed her Social Security benefits in Question 3(d), which asked if she received Social Security. Instead, Dr. Kim falsely answered Question 3(d) by stating she did not receive any Social Security benefits.

Dr. Kim also falsely answered Question 2 by stating she was self-employed at Research Resources, Inc. Yet the company actually dissolved five months prior to her application. While Dr. Kim technically gave a false answer, any employment would be an indication of her ability to earn money. In other words, Dr. Kim did not falsely answer Question 2 as an attempt to "reap[] the benefits of IFP status."[57]

Dr. Kim then falsely answered Questions 3(e) and 6. Dr. Kim falsely answered Question 3(e) by stating she did not receive an inheritance when she actually used her parent's inheritance to support her patent's research and development and pay living expenses. She falsely answered Question 6 by stating she did not own any real estate when she actually owned a house in the U.S., a one-sixth share in a commercial building in Korea, and a one-sixth share in some other real property in Korea (either a forest or a mountain).

Yet Dr. Kim did not end her disclosure of whether she owned an inheritance or real estate with Questions 3(e) and 6. Dr. Kim, instead, included an additional information letter with her IFP application where she further addressed those assets. The IFP application did not require or request an additional letter, but Dr. Kim wrote the letter to provide the Court with more information regarding her financial status. In the letter, Dr. Kim disclosed that she both had an inheritance and

---

[57] *See id.* at 448.

owned real property. She wrote that the "research and development of . . . [my] patent is supported by my parent's inheritance." She further wrote, "[t]o pay for litigation costs, I . . . remortgaged my house in the U.S. [and] obtained [a] Home Equity Line of Credit . . . ." Dr. Kim *voluntarily* supplemented her IFP application with additional information that contradicts her application's answers. Dr. Kim would not have voluntarily provided such contradictory information if she wanted to misrepresent her financial status and appear poorer than was true.

## V. CONCLUSION

We agree with the court's reasoning in *Hrobowski* that, in this case, it "does not make sense" to dismiss Dr. Kim's decade-long case that is close to being decided on its merits.[58] Dr. Kim did not "reap[] the benefits of IFP status"[59] because she accumulated significant debt in financing her lawsuit for over nine years, only applied for IFP status because the Court suggested it as an option, and her IFP application's contradictory information indicates she likely misunderstood the application. We will, nonetheless, sanction Dr. Kim under Rule 11 and require that she pay for the legal services she received from March 2009 through January 2010. However, we recognize that Dr. Kim's financial situation is bleak and, therefore, judgment will not likely be executable if Dr. Kim does not prevail at trial. Dr. Kim's IFP appointed counsel can, if they so choose, file a lien for their costs and must submit their fees and costs to the court on or before July 9, 2010. Sara Lee's motion to dismiss with prejudice pursuant to Title 28 of United States Code Section 1915(e)(2)(A) is denied [dkt. 247 & 254]. The case is set for further status on July 13, 2010 at 9:30 a.m. Dr. Kim and her former counsel shall appear at this hearing.

---

[58]*See id.*
[59]*See id.* at 448.

**IT IS SO ORDERED.**


**ENTERED: June 24, 2010**

_____

Susan E. Cox
UNITED STATES MAGISTRATE JUDGE